UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERRILL THOMAS NEWSOME,

      Plaintiff,

v.                                        CASE NO. 3:21-cv-35-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing held on March 3, 2020, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from April 2, 2017, the alleged disability onset date, through March 18, 2020, the date of the ALJ's decision.[2] (Tr. 19-27, 34-67.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 21.)

[2] Plaintiff had to establish disability on or before December 31, 2021, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 19.) The earliest time that SSI benefits are payable is the month following the month in

Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery*

which the application was filed.  *See* 20 C.F.R. § 416.335.  Plaintiff's SSI application was filed on July 16, 2018.  (Tr. 19.)

*v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

### A.   Issues on Appeal

Plaintiff raises two issues on appeal.  First, he argues that the ALJ's Residual Functional Capacity ("RFC") assessment is not supported by substantial evidence, because the ALJ failed to properly evaluate the treating opinions of Stephen Izeiyamu, M.D. by using the factors of supportability and consistency according to the new Social Security Administration ("SSA") rules and regulations, or, alternatively, according to Eleventh Circuit precedent for evaluating treating opinions.[3]  (Doc. 26 at 9-17.)  Plaintiff explains:

---

[3] Plaintiff's alternative argument is that the ALJ erred in failing to provide good cause for assigning little weight to Dr. Izeiyamu's opinions.  (Doc. 26 at 15-17.) Plaintiff also points out that "the ALJ failed to analyze Dr. Izeiyamu's opinions in light of the length of the treatment relationship with Mr. Newsome and the frequency of their examinations." (*Id.* at 16.)  However, the Eleventh Circuit opinion on which Plaintiff relies to support his alternative argument, *Simon v. Commissioner, Social Security Administration*, 1 F.4th 908 (11th Cir. 2021) (*Simon I*), was subsequently withdrawn on the Commissioner's petition for panel rehearing and replaced with a new opinion by the Eleventh Circuit, namely, *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021) (*Simon II*).  Importantly, *Simon II* was factually distinguishable from the present case because "Simon filed his claim in March of 2015," so the Eleventh Circuit did not need to consider how the new regulations, which apply to Mr. Newsome's case, affected "our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise." 7 F.4th at 1104 n.4.  Moreover, the Eleventh Circuit has since clarified in an unpublished decision that the new regulatory scheme, which applies to claims like Mr.

It is evident from the decision that the ALJ failed to provide a
reasonable explanation regarding the supportability and
consistency factors of Dr. Izeiyamu's opinions. The statement
that Dr. Izeiyamu's opinions were unsupported by other evidence
in the record is too vague and overbroad to substantiate the ALJ's
decision.

Further, the ALJ failed to adequately address the supportability
of Dr. Izeiyamu's opinions. The only thing the ALJ was arguing
was inconsistency with the *other* objective medical evidence of the
record. Moreover, it appears that Dr. Izeiyamu's opinions were
well-supported by his treatment notes. . . .

Further, Dr. Izeiyamu's opinions were consistent with the other
evidence in the record. . . . In 2018, [Plaintiff] was examined by
consultative examiner Dr. Sadat, whose findings were fairly
consistent with Dr. Izeiyamu's. . . .

Dr. Sadat's opinion was too vague to meaningfully contradict
[the] opinions of Dr. Izeiyamu. However, Dr. Sadat's findings
themselves support [the] findings of Dr. Izeiyamu.

(*Id.* at 11-14 (emphasis in original) (internal citations omitted).)

Second, Plaintiff argues that the ALJ failed to explain why Plaintiff's

activities of daily living were inconsistent with his alleged inability to

perform competitive work and the medical opinions of record. (*Id.* at 17.)

Plaintiff contends that the ability to do a few simple household chores is not

---

Newsome's filed on or after March 27, 2017, "no longer requires the ALJ to either
assign more weight to medical opinions from a claimant's treating source or explain
why good cause exists to disregard the treating source's opinion," but, instead, "an
ALJ should focus on the persuasiveness of medical opinions and prior
administrative medical findings by looking at five factors." *Matos v. Comm'r of Soc.
Sec.*, No. 21-11764, 2022 WL 97144, *4 (11th Cir. Jan. 10, 2022) (per curiam). As
such, this Court will not separately address Plaintiff's alternative argument
regarding Dr. Izeiyamu's opinions.

inconsistent with disability and adds that the opinions of both Dr. Izeiyamu and Dr. Sadat assessed severe functional limitations. (*Id.* at 18-19.)

Defendant responds that the ALJ properly evaluated the medical opinions of record and his decision is supported by substantial evidence. (Doc. 27 at 5-9.)  Defendant explains:

> Plaintiff convolutes old medical evidence case law and regulations with new medical evidence regulations and case law. Contrary to Plaintiff's assertion[,] there is no requirement to state the weight afforded to a medical opinion and treating physicians are not afforded any deference under the new regulations.  Moreover, under the facts of this case, the ALJ was only required to discuss the supportability and consistency factors . . . .
>
> . . . Contrary to Plaintiff's assertions, the ALJ is **not required** to explain how he or she considered the other factors, like treating relationship and specialization, unless he or she finds two or more opinions or findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(3) (2017).  Recently, the Eleventh Circuit recognized that the "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion" and affirmed when an ALJ properly evaluated a treating source opinion under the new regulations.  *Matos v. Comm'r of Soc. Sec.*, __ F. App'x __, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022). This decision confirms the analysis of medical opinions under the new regulations is not similar to the treating physician rule.

(Doc. 27 at 5-7 (emphasis in original).)

Defendant also argues that the ALJ properly considered Plaintiff's subjective complaints and his assessment is supported by substantial

evidence.  (*Id.* at 11-14.)  According to Defendant, the ALJ properly considered Plaintiff's daily activities and "did not unduly rely on Plaintiff's activities in deciding his claim, nor did the ALJ find Plaintiff's activities to be dispositive evidence of his ability to work," but rather considered them "together with the other evidence in accordance with the regulations, SSR 16-3p, and Eleventh Circuit case law."  (*Id.* at 13-14.)

## B. Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinions, the rules in 20 C.F.R. §§ 404.1520c, 416.920c apply to claims filed on or after March 27, 2017.[4]  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical

---

[4] The rules in 20 C.F.R. §§ 404.1527, 416.927 apply to claims filed before March 27, 2017.

sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the case record, 20 C.F.R. §§ 404.1520c(b), 416.920c(b), but need not articulate how evidence from non-medical sources has been considered, 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

"When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. §§ 404.1520c(c)(1) through (c)(5), 416.920c(c)(1) through (c)(5), as appropriate.  20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1). The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually."  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

When evaluating the persuasiveness of medical opinions, the most important factors are supportability[5] and consistency.[6]  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical

---

[5] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions  . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[6] "The more consistent a medical opinion(s)  . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)  . . . will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

source's medical opinions" in the determination or decision but is not

required to explain how he/she considered the rest of the factors listed in 20

C.F.R. §§ 404.1520c(c), 416.920c(c).  20 C.F.R. §§ 404.1520c(b)(2),

416.920c(b)(2).  As explained recently by another court in this District:

> Overall, supportability relates to the extent to which a medical
> source has articulated support for the medical source's own
> opinion, while consistency relates to the relationship between a
> medical source's opinion and other evidence within the record.  In
> other words, the ALJ's analysis is directed to whether the
> medical source's opinion is *supported* by the source's own records
> and *consistent* with the other evidence of record—familiar
> concepts within the framework of social security litigation.

*Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832,

*3 (M.D. Fla. Apr. 6, 2021) (emphasis in original) (report and

recommendation adopted by 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)).

When "two or more medical opinions . . . about the same issue are both

equally well-supported . . . and consistent with the record . . . but are not

exactly the same," the ALJ will articulate how he/she considered the other

most persuasive factors listed in 20 C.F.R. §§ 404.1520c(c)(3) through (c)(5),

416.920c(c)(3) through (c)(5), which include a medical source's relationship

with the claimant,[7] specialization, and other factors.[8]  20 C.F.R. §§
404.1520c(b)(3), 416.920c(b)(3).

When a claimant seeks to establish disability through his own
testimony of pain or other subjective symptoms, the Eleventh Circuit's three-
part "pain standard" applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.
1991) (per curiam).  "If the ALJ decides not to credit such testimony, he [or
she] must articulate explicit and adequate reasons for doing so."  *Id.*

> The pain standard requires (1) evidence of an underlying
> medical condition and either (2) objective medical evidence that
> confirms the severity of the alleged pain arising from that
> condition or (3) that the objectively determined medical condition
> is of such a severity that it can be reasonably expected to give
> rise to the alleged pain.

*Id.*

Once a claimant establishes that his subjective symptom is disabling
through "objective medical evidence from an acceptable medical source that
shows . . . a medical impairment(s) which could reasonably be expected to

---

[7] The relationship with the claimant factor combines consideration of the
following issues: the length of the treatment relationship, the frequency of the
examinations, the purpose of the treatment relationship, the extent of the
treatment relationship, and the examining relationship.  20 C.F.R. §§
404.1520c(c)(3)(i)-(v), 416.920c(c)(3)(i)-(v).

[8] The other factors may include: the medical source's familiarity with the
other evidence in the claim; the medical source's understanding of the disability
program's policies and evidentiary requirements; and the availability of new
evidence that may render a previously issued medical opinion more or less
persuasive.  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

produce the pain or other symptoms," pursuant to 20 C.F.R. §§ 404.1529(a), 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also* SSR 16-3p[9] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
> . . .
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[10] The determination

---

[9] SSR 16-3p rescinded and superseded SSR 96-7p, effective March 28, 2016, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

[10] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any

> or decision must contain specific reasons for the weight given to
> the individual's symptoms, be consistent with and supported by
> the evidence, and be clearly articulated so the individual and any
> subsequent reviewer can assess how the adjudicator evaluated
> the individual's symptoms.
>
> . . .
>
> In evaluating an individual's symptoms, our adjudicators
> will not assess an individual's overall character or truthfulness in
> the manner typically used during an adversarial court litigation.
> The focus of the evaluation of an individual's symptoms should
> not be to determine whether he or she is a truthful person.
> Rather, our adjudicators will focus on whether the evidence
> establishes a medically determinable impairment that could
> reasonably be expected to produce the individual's symptoms and
> given the adjudicator's evaluation of the individual's symptoms,
> whether the intensity and persistence of the symptoms limit the
> individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms

and to follow treatment once it is prescribed" will also be considered "when

evaluating whether symptom intensity and persistence affect the ability to

perform work-related activities." *Id.* "[I]f the frequency or extent of the

treatment sought by an individual is not comparable with the degree of the

individual's subjective complaints, or if the individual fails to follow

---

precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side
effects of any medication taken to alleviate the claimant's pain or other symptoms;
(5) any treatment, other than medication, received by the claimant to relieve the
pain or other symptoms; (6) any measures (other than treatment) used to relieve the
pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20
minutes every hour, or sleeping on a board); and (7) any other factors concerning
the claimant's functional limitations and restrictions due to pain or other
symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

C. **Medical Opinion Evidence**

1. **Stephen Izeiyamu, M.D.'s Treating Opinions**

12

On May 3, 2018, Dr. Izeiyamu completed a Physical Impairment Questionnaire about Plaintiff's functioning. (Tr. 341-42.) In the Questionnaire, he listed the following diagnoses: severe obstructive sleep apnea ("OSA"), morbid obesity, and gouty arthritis. (Tr. 341.) Dr. Izeiyamu opined that Plaintiff's symptoms were severe enough to frequently interfere with the attention and concentration required to perform simple work-related tasks. (*Id.*) He also opined that Plaintiff needed to recline or lie down in excess of the typical breaks during an eight-hour workday. (*Id.*) Plaintiff's five or six unscheduled breaks during the workday would last for 30 minutes each. (*Id.*) Further, Dr. Izeiyamu opined that Plaintiff could walk five blocks without rest, sit for 15 minutes and stand/walk for 10 minutes at one time, sit for one hour total, and stand/walk for zero hours total in an eight-hour workday. (*Id.*) In addition, Plaintiff could lift and carry less than 10 pounds frequently and 20 pounds occasionally. (Tr. 342.) Finally, Dr. Izeiyamu opined that Plaintiff would likely be absent from work more than four times a month as a result of his impairments and that he was not physically capable of working eight hours a day, five days a week on a sustained basis. (*Id.*)

On December 27, 2019, Dr. Izeiyamu completed a Physical Assessment of Plaintiff's functional abilities. (Tr. 494-95.) His diagnoses were severe OSA and chronic gouty arthritis. (Tr. 494.) Dr. Izeiyamu again opined that Plaintiff's symptoms were severe enough to frequently interfere with the

13

attention and concentration required to perform simple work-related tasks. (*Id.*)  He also opined that Plaintiff needed to recline or lie down in excess of the typical breaks during an eight-hour workday.  (*Id.*)  Plaintiff's five or six unscheduled breaks during the workday would last for 15-30 minutes each. (*Id.*)  Further, Dr. Izeiyamu opined that Plaintiff could walk two city blocks without rest, sit for one hour, and stand/walk for one hour total in an eight-hour workday.  (*Id.*)  In addition, Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally.  (*Id.*)  Dr. Izeiyamu again opined that Plaintiff would likely be absent from work more than four times a month as a result of his impairments.  (Tr. 495.)

## 2.     Mir Ali Sadat, M.D.'s Examining Opinion

On September 29, 2018, Dr. Sadat examined Plaintiff at the request of the Florida Division of Disability Determination.[11]  (Tr. 380-86.)  Dr. Sadat recorded the following functional status:

-Sitting: Cannot for long hours, back hurts
-Standing: Can stand for 10 minute[s], left toe hurts
-Walking: Able to walk half a block
-Cooking/Meal Prep: Himself
-Personal Care (Bathe/dressing): himself
-Housekeeping and Laundry: himself
-Shopping/Banking: mother helps

---

[11] Dr. Sadat noted: "I have reviewed the patient's medical history and radiological studies, if any, given to me to the best of my ability.  I have performed a thorough history and physical examination of the patient to the best of my ability. The information in this document is based on the information given to me from the patient."  (Tr. 386.)

14

-Driving: no issues
-Hobbies: football games

(Tr. 380.)

Plaintiff's physical examination was unremarkable except for the following: morbid obesity; mild swelling, tenderness with palpation, and limited range of motion of the left big toe; inability to walk on heels and toes due to left toe pain; and inability to squat and rise due to morbid obesity.  (Tr. 381-83; *see also* Tr. 385 (noting reduced range of motion in the great toe).) Plaintiff was diagnosed with gout in the left big toe, hypertension, diabetes mellitus type II, morbid obesity, and OSA on continuous positive airway pressure ("CPAP").  (Tr. 385.)

In the Medical Source Statement ("MSS"), Dr. Sadat opined as follows:

**-Abilities:** Claimant is unable to perform work related physical activities[,] such as sitting, standing, walking, lifting/carrying/ handling objects for long times, as well as work related mental activities[,] such as understanding[] [and] sustained concentration.  [The] mental impairment statement is based on claimant['s] testimony.  Claimant states that he falls asleep easily during the day and has difficulties concentrating. He mentioned that he has obstructive sleep apnea, he uses CPAP during nights but his sleep is still disrupted by multiple apneas. He mentioned that when he watches TV at home he just fall[s] asleep after few minutes even during very important games.

**-Limitations:** Morbid obesity, Gout disease.  States [sic] he feels sleepy and has difficulties concentrating during days due to OSA.

(*Id.* (emphasis in original).)  Based on the physical examination performed, Dr. Sadat recommended a follow-up with a primary care provider and weight

15

loss.  (*Id.*)

### 3.   State Agency Non-Examining Consultants' Opinions

On October 3, 2018, after reviewing the records available as of that date, Jolita Burns, M.D. completed a Physical RFC Assessment of Plaintiff's functional abilities.  (Tr. 74-76.)  Dr. Burns opined, *inter alia*, that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently; could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday; could occasionally balance and climb ramps, stairs, ladders, ropes, and scaffolds; and should avoid concentrated exposure to extreme heat, humidity, and hazards.  (*Id.*)

On January 30, 2019, Max Kattner, M.D. completed a Physical RFC Assessment of Plaintiff's functional abilities.  (Tr. 96-99.)  He opined, *inter alia*, that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently; could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday; could frequently climb ramps and stairs; could occasionally balance and climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to extreme heat, humidity, and hazards. (Tr. 96-98.)

### D.    The ALJ's Decision

At step two of the sequential evaluation process,[12] the ALJ found that Plaintiff had the following severe impairments: morbid obesity, OSA, diabetes mellitus, hypertension, gouty arthritis, and sciatica.  (Tr. 21.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 22.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform light work with limitations, as follows:

> The claimant can climb ramps and stairs no more than frequently.  The claimant can balance and climb ladders, ropes, and scaffolds no more than occasionally.  The claimant must avoid concentrated exposure to heat, humidity, and hazards such as unprotected heights and moving machinery.  The claimant requires the ability to alternate between sitting and standing at will.

(*Id.*)  The ALJ stated that he had "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence."  (*Id.*)  The ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements

---

[12] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (Tr. 23.)

The ALJ then summarized Plaintiff's testimony as follows:

At the hearing, the claimant testified that he is currently 39 years old and he has a high school education. He has not worked since April 2017. He has previously worked in landscaping. He experiences gout attacks two or three times a month, and these can last for four days. His foot stays swollen because of gout, and he has not been able to wear a shoe for 7 months. He can stand for 10 minutes and walk for 10 minutes. He uses a cane about 3 times a month when he has gout attacks. He can sit for 30 minutes. He gets 6 hours of sleep at night with a CPAP machine and 2 or 3 hours without a CPAP machine. He drives about once a month. He fell asleep at a stoplight when he was driving about a year ago. His blood pressure is borderline high, and was recently 160/94. He has gone to the emergency room for high blood pressure twice in the past year. He can dress and bathe himself independently and prepare simple meals. He is able to wash dishes and do laundry unless he has a gout flare-up. He is able to go grocery shopping independently. He enjoys playing cards and he attends church occasionally. He can lift about 20 pounds and carry it about 10 to 15 feet. He can climb a flight of stairs slowly. He can reach overhead. He can hold a hammer but he would have trouble using it during a gout attack. He can pick up small objects. Stooping and squatting is painful.

(*Id.*)

The ALJ also addressed the medical evidence and opinions of record, including the physical impairment assessments completed by Dr. Izeiyamu in May 2018 and December 2019, the consultative examination findings by Dr. Sadat, and the State agency reviewing doctors' opinions. (Tr. 23-24.) The

18

ALJ noted that Dr. Izeiyamu's opined limitations on both occasions were similar, but his opinions were found to be "not persuasive," because they were "not supported by the other objective medical evidence and medical findings of record." (Tr. 23.)  In contrast, Dr. Sadat's opinion was found to be "persuasive" because it was "generally consistent with other medical findings of record." (Tr. 24.)  The State agency doctors' opinions from October 2018 and January 2019 were found to be "persuasive," because they were "consistent with the limited findings contained in the rest of the objective medical evidence of record." (*Id.*)

After addressing the relevant medical evidence, the ALJ made the following findings:

> [The medical] evidence does not establish that the claimant's impairments are disabling in nature or prevent him from performing work in accordance with the [RFC] assessment set forth above.  The record shows several severe impairments, but does not establish that any of these conditions are productive [sic] of work-preclusive limitations.  He has acute flare-ups of gouty arthritis that primarily affect his legs, but the objective medical evidence does not demonstrate significant ongoing gait abnormalities or the need for an assistive device to ambulate.  These flare-ups are not shown to be experienced at a level of frequency and/or intensity that would preclude the performance of all work.  He has also been diagnosed with type II diabetes mellitus, but this condition is described as being without complications and has not been associated with substantial health conditions such as diabetic neuropathy or diabetic retinopathy.  He has been assessed with obstructive sleep apnea and hypertension, but these conditions do not cause a level of functional limitation that would prevent the performance of all basic work activities.  He was also treated for sciatica in October

2019, but examination findings were normal apart from lumbar area muscle spasms. He is not shown to have significant deficits in strength or sensation, significant limitation of motion, or gait abnormalities. Diagnostic imaging has not established the presence of any condition that would be expected to prevent all work, and he is not shown to have significant limitations in using his hands and fingers to perform fine and gross manipulative tasks.

Additionally, he is able to perform a variety of activities when he is not having a gout flare-up. He testified at the hearing that he is able to bathe and dress himself independently, prepare simple meals, wash dishes, do laundry, go grocery shopping independently, and attend church. Such activities and abilities are consistent with an ability to perform competitive work. Significantly, the weight of the medical opinions of record is also contrary to a finding that the claimant is disabled and unable to perform all work. The record also indicates a history of medication noncompliance, and Social Security Regulations provide that a claimant will not be found disabled if prescribed treatment is not followed without good reason . . . . Taken as a whole, his impairments are not shown to be productive [sic] of a level of functional limitation that precludes the performance of all basic work activities, as is required for a finding of disability.

Finally, the [ALJ] has considered the combined effect of the claimant's impairments and the possibility that the combined effect can be greater than each of the impairments considered separately. The claimant's impairments have been considered when assessing the claim under the listings and during the other steps of the sequential evaluation process, including when assessing the claimant's [RFC].

(Tr. 24-25.) The ALJ concluded that the RFC assessment was "supported by the objective medical evidence, including the claimant's treatment records and the credible medical opinions of record, and also by the claimant's own testimony and actions." (Tr. 25.)

20

Then, at step four, the ALJ determined that Plaintiff was unable to perform his past relevant work of lawn service worker.  (Tr. 25-26.)  At the fifth and final step of the sequential evaluation process, considering Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as cashier II (DOT No. 211.462-010), ticket taker (DOT No. 344.667-010), marker (DOT No. 209.587-034), and router (DOT No. 222.587-038).  (Tr. 26-27.)  Therefore, the ALJ concluded that Plaintiff was not disabled from April 2, 2017 through March 18, 2020.  (Tr. 27.)

### E.   Analysis

The Court finds that the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record.  First, the ALJ properly evaluated Dr. Izeiyamu's opinions under the new SSA rules and regulations and his findings are supported by substantial evidence.  "While the ALJ may not have used the words 'supportability' and 'consistency,' the ALJ's discussion of [Dr. Izeiyamu's] opinions and findings regarding the record was based on those factors."  *Cook*, 2021 WL 1565832 at *5; *see also Thaxton v. Kijakazi*, No. 1:20-cv-616-SRW, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022) (stating that "the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the

21

medical source himself and whether the opinion is consistent with other evidence of record"); *cf. Cueva v. Kijakazi*, No. 1:20-cv-407, 2021 WL 4192872, *5 (E.D. Cal. Sept. 15, 2021) ("An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion.").

Here, after setting forth the specific opinions rendered by Dr. Izeiyamu in 2018 and 2019, the ALJ found those opinions to be "not persuasive" because they were "not supported by the other objective medical evidence and medical findings of record." (Tr. 23; *see also* Tr. 25 (noting that in determining the RFC, the ALJ considered the objective medical evidence, including treatment records and credible medical opinions, as well as Plaintiff's testimony and actions).) In doing so, the ALJ fairly addressed both the supportability and consistency factors. While the ALJ could have been more explicit, his findings are nevertheless supported by substantial evidence.

In his discussion of the opinion evidence, the ALJ noted the limited findings in the objective medical evidence of record. (Tr. 24; *see also* Tr. 419, 428, 432, 435, 439, 453-55, 457-59, 461, 464, 467-68, 471-72, 475, 500-01 & 503-04 (showing limited findings in the objective medical evidence and that Plaintiff was treated conservatively with medications for his conditions).)

Specifically, despite noting some gout flare-ups, the objective medical evidence did not demonstrate significant ongoing gait abnormalities or the need for an assistive device.  (Tr. 24; *see also* Tr. 453-54, 500 & 503-04 (noting "gout symptoms [were] improving" despite limited range of motion of the left ankle); Tr. 357-58 (noting that Plaintiff was discharged from the emergency room on November 4, 2017 after complaining of right ankle pain); *cf.* Tr. 464, 467, 471 & 475 (noting "hypertonicity and poor tone"); Tr. 468 & 474 (noting "uric acid elevation[] [and] gout exacerbation").)  Further, as the ALJ stated, Plaintiff's diabetes was not "associated with substantial health conditions such as diabetic neuropathy or diabetic  retinopathy."  (Tr. 24; *see also* Tr. 352-53 (noting that Plaintiff was discharged from the emergency room on June 24, 2018 in stable condition after complaining of weakness and fatigue due to hyperglycemia).)

Similarly, Plaintiff's OSA and hypertension did "not cause a level of functional limitation that would prevent the performance of all basic work activities."  (Tr. 24; *see also* Tr. 467, 471 & 474 (noting that Plaintiff was doing better with CPAP); Tr. 349-50 (noting that Plaintiff was discharged from the emergency room on July 17, 2018 in stable condition after being admitted for elevated blood pressure).)  In addition, while Plaintiff was treated for sciatica in October 2019, his "examination findings were normal apart from lumbar area muscle spasms."  (Tr. 25; *see also* Tr. 444-47, 517-27,

533.)  Also, as the ALJ stated, "[d]iagnostic imaging has not established the presence of any condition that would be expected to prevent all work."  (Tr. 25; *see also* Tr. 369 (noting that X-rays of the right ankle showed mild soft tissue swelling).)  Further, the ALJ properly noted that the record "indicate[d] a history of medication noncompliance."  (Tr. 25; *see also* Tr. 432 & 468 (noting history of non-compliance and "[b]lood pressure regimen compliance [was] strongly advised"), 453, 457, 459, 463-64, 467, 470, 474, 500, 503.)

In addition, the ALJ's extensive discussion of the evidence as part of his RFC determination and elsewhere in the decision further supports his evaluation of Dr. Izeiyamu's opinions.  *See Thaxton*, 2022 WL 983156 at *8 ("An ALJ may refer to evidence discussed elsewhere in the decision when evaluating medical opinions or prior administrative medical findings.").  Based on the foregoing, the ALJ's consideration of Dr. Izeiyamu's opinions was supported by substantial evidence and "comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of the opinion[s]."  *Cook*, 2021 WL 1565832 at *5.

Turning to the second argument on appeal, the ALJ's consideration of Plaintiff's subjective complaints and daily activities was adequate and supported by substantial evidence.  The ALJ found that while Plaintiff's

medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23.)  The ALJ then summarized Plaintiff's testimony, the objective medical evidence, and the opinions of record in determining the RFC.  (Tr. 23-25.)  The ALJ noted that Plaintiff was "able to perform a variety of activities when he [was] not having a gout flare-up." (Tr. 25, 52-53.)  Specifically, the ALJ recited Plaintiff's testimony that "he [was] able to bathe and dress himself independently, prepare simple meals, wash dishes, do laundry, go grocery shopping independently, and attend church," and found such activities and abilities to be "consistent with an ability to perform competitive work." (Tr. 25, 52-53, 55.)  The ALJ concluded that Plaintiff's testimony and actions, along with the objective medical evidence and the credible medical opinions, supported his RFC assessment.  (Tr. 25.)

The Court finds that the ALJ provided explicit and adequate reasons, supported by substantial evidence, for his evaluation of Plaintiff's subjective complaints.  The ALJ also properly considered Plaintiff's daily activities as one among several factors in determining that Plaintiff was not disabled. *See, e.g.*, *Matos*, 2022 WL 97144 at *7 (stating that "the ALJ reasonably relied on Matos's statements that she engaged in a variety of daily living

activities such as independent dressing and grooming, cooking, cleaning, shopping, driving, going on family vacations, and taking care of her family"). To the extent Plaintiff argues that the ALJ should have assessed greater limitations in light of his reported daily activities, subjective complaints alone are insufficient to establish work-related limitation or disability. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ."). Also, to the extent Plaintiff argues that greater limitations should have been assessed in light of the opinions of Dr. Izeiyamu and Dr. Sadat, the Court has already determined that the ALJ properly evaluated the medical opinion evidence.[13] Here, the ALJ's RFC assessment accounted for Plaintiff's impairments and any resulting limitations to the extent they were supported by credible evidence.

In sum, the ALJ properly considered Plaintiff's subjective complaints, including reported daily activities, and his assessment was supported by

---

[13] While Plaintiff states that "Dr. Sadat's opinion was too vague to meaningfully contradict [the] opinions of Dr. Izeiyamu," he argues that "Dr. Sadat's findings themselves support [the] findings of Dr. Izeiyamu." (Doc. 26 at 14.) The ALJ found that Dr. Sadat's opinion was persuasive because it was "generally consistent with other medical findings of record." (Tr. 24.) The ALJ similarly found that the State agency doctors' opinions were persuasive because they were "consistent with the limited findings contained in the rest of the objective medical evidence of record." (*Id.*) As shown earlier, the ALJ properly observed that the objective medical record included limited findings and his evaluation of the medical opinions is supported by substantial evidence.

substantial evidence.  The ALJ's evaluation of the medical opinions was also based on correct legal standards and was supported by substantial evidence.

## III.   Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1.     The Commissioner's decision is **AFFIRMED**.

2.     The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 13, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record